IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MAURICE BERNARD STEWART, JR.     *

        v.         *   CIVIL ACTION NO. JFM-10-863

NORMAN A. BROWN, M.D.     *
ELIZABETH, R.N.
OFFICER FLANARY[1]     *
OFFICER LOGSDEN
            ***

MEMORANDUM

Maurice Bernard Stewart, Jr. ("Stewart") is an inmate housed at the North Branch Correctional Institution ("NBCI"). On April 7, 2010, the court received for filing Stewart's 42 U.S.C. § 1983 civil rights action for damages, stating that on or about May 11, 2008, he was taken to the emergency room ("ER") of Washington County Hospital ("WCH") for diagnostic testing related to a series of grand mal seizures. Stewart claims that the ER physician, Dr. Norman Brown, could not find a definitive diagnosis for his symptoms and he was to be discharged from the ER to allow doctors to do more extensive testing. He alleges that Dr. Brown ordered a hospital nurse, "Elizabeth," to administer liquid Dilantin intravenously because his therapeutic levels were low. Stewart complains the nurse left him unmonitored and the intravenous line ("I.V.") blew, resulting in liquid Dilantin flowing directly into his blood stream and causing his right arm to swell.

Stewart further states that he could not walk from the hospital room to the transport van. He complains that Dr. Brown denied a request for a wheel chair made on his behalf by the transportation officers and the correctional officers employed "excessive force" by deliberately dragging him, fully

---

[1]     The Clerk shall correct the name on the docket.

restrained, about 50 yards on his back and head from the hospital room to the parking lot, before placing him in the van. ECF No. 1.

Dr. Brown has filed a motion to dismiss and Correctional Officers Flanary and Logsden have submitted a motion to dismiss or, in the alternative, motion for summary judgment, construed as a motion for summary judgment. ECF Nos. 20 & 22. In response Stewart has filed opposition pleadings.[2] ECF Nos. 25 & 27. After review, the court finds that an oral hearing is not necessary to the disposition of the pending motions. *See* Local Rule 105.6. (D. Md. 2010). For reasons to follow, summary judgment shall be denied. The court shall first address Stewart's non-dispositive filings.

Stewart has filed a motion for entry of default alleging that defendants Brown and "Elizabeth, R.N." failed to comply with the timetable for filing a response under federal rule pleading requirements. ECF No. 16. The motion for entry of default shall be denied. Service of process has not been effected on "Elizabeth, R.N." and defendant Brown has filed a motion to dismiss. Neither defendant is in violation of court order.

Stewart next files a motion to compel the "entire video disc footage," claiming that defendants "cherry picked," edited, and deleted portions of the video for purposes of hiding the injury. He claims that such short footage conceals the "torture" he experienced at the hands of correctional officers and whether he was able to stand up or walk at all during his ER visit. ECF. Nos. 28 & 34. The motion shall be denied. It is readily apparent to the court that the video was taken from an indoor hospital security camera and reveals all that it could for the limited seconds Stewart and the correctional officers were within its camera view. Further, while Stewart seemingly argues that the video disc has been heavily edited and does not reflect the officers' mistreatment, the

---

[2] Stewart has additionally filed motions to compel, for appointment of counsel, and for copy

court observes that he has requested additional copies of the disc so that one may be sent to the U.S. Department of Justice as evidence of a "pattern of abuse." *See* ECF No. 35. This court will determine the probative value of the video submitted by defendants Flannery and Logsden after review of all briefing.

Further, Stewart asks to be provided additional copies of the video disc exhibit, claiming that his copy was confiscated by prison officers when he attempted to mail it to the U.S. Department of Justice and forwarded by prison staff to the Office of the Attorney General. ECF No. 35. The motion for copy work shall be denied without prejudice at this juncture.

Fed. R. Civ. P. 56(c)(2) provides that:

> [Summary judgment] should be rendered if the pleadings, the discovery and disclosures materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

This does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her

---

work at the government's expense. ECF Nos. 28, 29, & 35.

favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "The party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [its] pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 240 (4th Cir. 1988).

Dr. Brown argues that the complaint against him is subject to dismissal under Rule 12(b)(2) & (6) because Stewart failed to properly serve him and did not first file his claim in before the Maryland Health Care Alternative Dispute Resolution Office. ECF No. 20. The court finds both arguments unpersuasive. First, while true that the court attempted to use the streamlined service of process procedure found under *In Re: State Prisoner Litigation*, Misc. No. 00-308, Administrative Order 2003-7 (D. Md. Nov. 21, 2003) by serving Brown through the Office of the Attorney General, the NBCI Litigation Coordinator, and the law firm for the private medical prison contractor, service was not accepted. Natural progression from that unsuccessful attempt would have dictated that Stewart himself provide a service address for Brown, perhaps the WHC. Before that could occur, however, Brown's counsel filed a motion to dismiss on behalf of his client. His representation did not occur out of thin air and the court finds counsel's dismissal motion (on personal service of

process grounds) unavailing when it is readily apparent that Brown received notice of the self-represented and confined litigant's complaint.³ The motion to dismiss shall be denied.

Stewart has, in any event, failed to set out a colorable 42 U.S.C. § 1983 claim against Dr. Brown, a private physician at WCH.⁴ There is no showing that Brown is a state actor, a threshold requirement for § 1983 liability.⁵ The jurisdictional and threshold requirements of §1983 civil actions are that a substantial federal question be asserted and that the named defendants be acting "under color of" state law. *See* 28 U.S.C. §§1343(a)(3) and (4); *West v. Adkins*, 487 U.S. 42, 49 (1988); *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 928-930 (1982). For this reason, the complaint against Dr. Brown shall be dismissed.⁶

The court now turns its attention to the excessive force claims made by Stewart. Again, he alleges that he could not walk and after the wheelchair was allegedly denied by WHC medical staff, he was told to put on his clothes. Shackles were placed on his legs and hands and Correctional

---

³ In addition, the undersigned observes, as does Stewart, that the claim against Brown does not rest in medical malpractice, but involves a constitutional challenge to the alleged denial of a wheel chair. Therefore, Brown's argument to the contrary, exhaustion before the Maryland Health Care Alternative Dispute Resolution Office is not required.

⁴ As noted, defendant "Elizabeth, R.N." has not been served. Nonetheless, the court finds that the claim that Nurse Elizabeth failed to monitor Stewart while he was receiving his I.V. at WCH states at best a claim of medical malpractice, which is not actionable under § 1983. Further, it does not appear that the nurse is a state actor. Consequently, the civil rights complaint against Elizabeth, R.N. shall be dismissed.

⁵ Stewart acknowledges that Brown is not an employee of the prison's medical staff but was in fact an "outside hospital's Emergency Room doctor" who works at WHC. ECF No. 25, Aff. at ¶ 1. In his reply, Brown additionally claims that as a private physician he is not a "state actor" subject to § 1983 liability. ECF No. 31 at 3-4.

⁶ Further, the naked assertion made that Brown refused to accede to correctional officer's request for a wheel chair so that Stewart could be wheeled to the transport vehicle does not, in and of itself, state a constitutional claim.

Officer Flanary dragged him over 50 yards from the hospital room, through the WHC corridor, and to the ER's outside entrance to the parking lot.

Correctional Officer Flanary affirms that after testing and examination at WHC, Stewart became verbally belligerent and abusive because he was not satisfied with the medical treatment and he and Officer Logsden were twice told by a physician to get Stewart out of the hospital. ECF No. 22. Flanary notes that: it became apparent that Stewart could not walk; requests for a wheelchair were repeatedly denied; Stewart was becoming disruptive in the ER and was yelling and cursing at all of the medical personnel; and non-medical personnel were also in the ER. He affirms that he and Logsden were able to get Stewart to the double doors that lead to the ER exit doors, when he again fell to the floor. The correctional officers state that given the situation and the need to address the issue efficiently, Correctional Officer Flanary pulled Stewart by his leg irons out of the ER to the sidewalk. Flanary maintains that Stewart weighed over 200 pounds and as he and Officer Logsden had weapons and they did not want Stewart near the weapons, they declined to carry him. He states that Stewart slid quickly over the smooth hospital floor on his back, there was no resistance, and his head was up and did not touch the floor. Officer Logsden followed.

Defendants' allege that Stewart was able to step up into the prison van with assistance. Upon returning to the institution inmate Stewart was taken to the 3rd floor hospital by wheelchair. Flanary affirms that Stewart suffered no injuries from the incident. Stewart was interviewed by the prison supervisor, Captain Brian Smith, who affirms that Stewart acknowledged his behavior in the ER and that the officers had to do what they had to do. According to Smith, Stewart said that he suffered no injuries as a result of the incident. In addition, the contemporaneous medical record over the next

48 hours show that Stewart displayed no abnormalities other than a swollen arm. There were no cuts, bruises or other injuries noted.

For his part, Stewart alleges that the correctional officers' actions violated the Eighth Amendment because Flanary's act in dragging him by his leg irons while his arm was severely swollen and in extreme pain was unprovoked. ECF No. 27. In his affidavit, Stewart states that he does have difficulty walking at times due to his epileptic seizure disorder and metastatic sarcoma and on the night of May 11, 2008, he was, pure and simple, unable to walk. He maintains that Flanary dragged him from the treatment room to the concrete curb outside of the ER and he banged his head numerous times on the pavement. ECF No. 27 at Stewart Affidavit. He denies that he had become loud, disruptive, or threatening in the ER and claims that if he did so, the officers were obligated to cite him with infractions, which they did not do. Rather, he states that he was calm and non-resistant throughout the entire time he was in WHC.

Stewart asserts that as a result of his being dragged, he suffered numerous injuries to his head, back, and groin areas. He alleges that he made numerous requests for sick-call because of lingering injuries and was seen by the prison medical staff for treatment, had physical therapy, and is now wheelchair bound due to the deterioration of his back from being dragged by Correctional Officer Flannery. Stewart also claims that he suffers from severe headaches and pain in his groin at this time. *Id*.

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). This court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of

7

the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *See Whitley v. Albers*, 475 U. S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *See Wilkens v. Gaddy*, 130 S. Ct. 1175, 1178-1179 (2010) (holding the core judicial inquiry when a prisoner alleges excessive force is not whether a certain quantum of injury was sustained, but rather whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm). The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically, liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id*.

Flanary is alleged to have physically dragged Stewart, by his leg shackles, through hospital corridors and down a sidewalk to the outside curb before placing Stewart in a prison van. The video exhibit from an apparent hospital security camera shows Stewart in full restraints being dragged through the hospital corridor to the doors leading outside. The physicality of Flanary's action on the video appears benign. Plainly, the "force" applied by Correctional Officer Flanary is not the conventional force at issue in most Eighth Amendment inmate excessive force cases, i.e., use of chemical agents, application of tight shackles, physical blows and the like. Nonetheless, given the limited record and the disputed facts regarding the need to take such action and the extent of Stewart's injuries, the court cannot state that Flanary's acts were taken as a good faith effort to maintain or restore discipline or were not malicious. The case cannot be resolved on summary judgment, at least not at this stage. Credibility determinations are to be left for the trier of fact, where, as here, Stewart's narrative, supported by statements under oath and based on personal

8

knowledge and the inferences upon which he relies rest comfortably within the realm of "reasonable." (For like reasons, the state defendants are not entitled to qualified immunity at this state of the case.) Accordingly, defendants Flanary and Logsden's motion for summary judgment shall be denied.

Stewart also seeks the appointment of counsel, arguing that he is an indigent prisoner who cannot afford an attorney to assist him in this complex case. ECF No. 29. Plaintiff was granted leave to proceed *in forma pauperis* under 28 U.S.C. § 1915(e). Under that statute a court of the United States has the discretion to request an attorney to represent any person unable to afford counsel. In such situations, the appointment of counsel may be considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). The question of whether such circumstances exist in any particular case rests on the characteristics of the claim and the litigant. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984); *abrogated on other grounds by Mallard v. U.S. District Court*, 490 U.S. 296, 298 (1989) (holding that § 1915 does not authorize compulsory appointment of counsel). The existence of exceptional circumstances "[w]ill turn on the quality of two basic factors--the type and complexity of the case, and the abilities of the individuals." *Id*. Although Stewart has shown the wherewithal to present his complaint and papers, the court deems it appropriate for counsel to be appointed in this matter. His motion shall be granted.

A separate Order reflecting the rulings entered in this opinion shall follow.


Date: March 4, 2011                    ___/s/_____
                                       J. Frederick Motz
                                       United States District Judge